GLENN D. POMERANTZ (SBN 112503)
glenn.pomerantz@mto.com
MELINDA E. LEMOINE (SBN 235670)
melinda.lemoine@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Fl.
Los Angeles, California 90071-1560
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

ROSEMARIE T. RING (SBN 220769)
rosemarie.ring@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Fl.
San Francisco, CA 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4977

Attorneys for Defendants BUENA VISTA
HOME ENTERTAINMENT, INC.; THE
WALT DISNEY COMPANY; WARNER
BROS. ENTERTAINMENT INC.;
WARNER BROS. HOME
ENTERTAINMENT INC.; UNIVERSAL
STUDIOS HOME ENTERTAINMENT
LLC; PARAMOUNT PICTURES
CORPORATION; SONY PICTURES
ENTERTAINMENT INC.; SONY
PICTURES HOME ENTERTAINMENT
INC.

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CHRISTINE ANTHONY, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> BUENA VISTA HOME ENTERTAINMENT INC., et al. <br><br> Defendants. | Case No. 2:15-cv-09593-SVW-JPR <br><br> **STUDIOS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE, CAL. CODE OF CIV. PROC. 425.16 *ET SEQ.*** <br><br> Date:  March 21, 2016 <br> Time:  1:30 pm <br> Place:  Courtroom 6, 2nd Floor <br> Judge:  Hon. Stephen V. Wilson |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on March 21, 2016 or as soon thereafter as the matter may be heard, in Courtroom No. 6, United States Courthouse, 255 East Temple Street, Los Angeles, California 90012, before the Honorable Stephen V. Wilson, Defendants Buena Vista Home Entertainment, Inc.; The Walt Disney Company; Warner Bros. Entertainment Inc., erroneously sued as Warner Bros. Entertainment, Inc.; Warner Bros. Home Entertainment Inc., erroneously sued as Warner Home Entertainment, Inc.; Universal Studios Home Entertainment LLC; Paramount Pictures Corporation; Sony Pictures Entertainment Inc., and Sony Pictures Home Entertainment Inc. (the "Studios") will, and hereby do, move the Court to strike the Complaint in its entirety pursuant to California's anti-SLAPP statute, California Code of Civil Procedure § 425.16.

This Motion is based upon this Notice of Motion; the attached Memorandum of Points and Authorities; Plaintiffs' Complaint; and any argument at a hearing of this matter.

The Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on January 12, 2016.

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................. 1

II. BACKGROUND .................................................................................................. 4

    A.  Methods of Distribution for Movies and TV Programs ......................... 4

    B.  Captioning and Subtitling in Movies and TV Programs. ...................... 4

    C.  The *Boltz* Settlement. ............................................................................ 7

    D.  Claims in This Case. ............................................................................. 9

III. ARGUMENT ...................................................................................................... 9

    A.  Step One: Plaintiffs' Claims Arise from Acts in Furtherance of the Right to Free Speech in Connection with a Public Issue. ............... 10

        1.  Captioning Constitutes an "Act in Furtherance" of the Right to Free Speech .................................................................. 11

        2.  Captioning Is "in Connection with a Public Issue or an Issue of Public Interest." ............................................................. 14

    B.  Step Two: Plaintiffs Will Not Be Able to Demonstrate a Probability of Prevailing on Each of Their Claims. ............................ 16

        1.  Plaintiffs' Misrepresentation Claims Will Not Succeed. ........... 16

            a.  Plaintiffs Cannot Prove Any Misrepresentation by the Studios That Is "Likely to Deceive" Reasonable Consumers. ...................................................................... 16

            b.  Plaintiffs Cannot Prove Reliance. ................................... 20

        2.  Plaintiffs' Warranty Claims Will Not Succeed. ........................ 21

            a.  Implied Warranties Do Not Apply to the Claims Here. .................................................................................. 21

            b.  Plaintiffs Cannot Prove the Failure to Caption All Song Lyrics Rendered Motion Pictures and Television Programs Unfit for Their Ordinary Use. ........ 24

        3.  Plaintiffs' Unruh Act Claim Will Not Succeed. ....................... 25

IV. CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Anunziato v. eMachines, Inc.*,
  402 F. Supp. 2d 1133 (C.D. Cal. 2005).............................................................22

*Ball v. AMC Entm't, Inc.*,
  246 F. Supp. 2d 17 (D.D.C. 2003)......................................................................22

*Cullen v. Netflix, Inc.*,
  880 F. Supp. 2d 1017 (N.D. Cal. 2012)..............................................................25

*Doe v. Gangland Prods.*,
  730 F.3d 946 (9th Cir. 2013) ......................................................................12, 14

*Fortyune v. Am. Multi-Cinema*, *Inc.*,
  364 F.3d 1075 (9th Cir. 2004).............................................................................22

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) .................................................................................17

*Garcia v. Sony Comp. Entm't Am.*,
  *LLC*, 859 F. Supp. 2d 1056 (N.D. Cal. 2012) ............................................18, 19

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
  100 F. Supp. 2d 1086 (C.D. Cal. 1999), *aff'd in relevant part by* 343
  F.3d 1000 (9th Cir. 2003) ...................................................................................19

*Greater Los Angeles Agency on Deafness, Inc. ("GLAAD") et al. v.
  Cable News Network, Inc. ("CNN")*,
  742 F.3d 414 (9th Cir. 2014) .......................................................................passim

*Hilton v. Hallmark Cards*,
  599 F.3d 894 (9th Cir. 2010) ......................................................................11, 15

*In re iPhone 4S Consumer Litig.*,
  No. 12-cv-1127-CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013)..................25

*Joseph Burstyn, Inc. v. Wilson*,
  343 U.S. 495 (1952) ............................................................................................11

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Keegan v. Am. Honda Motor Co.*,
284 F.R.D. 504 (C.D. Cal. 2012)..........................................................22

*Marchante v. Sony Corp. of Am., Inc.*,
801 F. Supp. 2d 1013 (S.D. Cal. 2011) ...............................................21

*Marolda v. Symantec Corp.*,
672 F. Supp. 2d 992 (N.D. Cal. 2009)..................................................20

*In re NJOY, Inc. Consumer Class Action Litig.*,
No. 14-cv-00428-MMM, 2015 WL 4881091 (C.D. Cal. Aug. 14,
2015) .......................................................................................................21

*Red v. Kraft Foods, Inc.*,
No. 10-cv-1028-GW, 2012 WL 8019257 (C.D. Cal. Apr. 12, 2012) .................21

*Sanders v. Acclaim Entm't, Inc.*,
188 F. Supp. 2d 1264 (D. Colo. 2002) ................................................23

*Sarver v. Hurt Locker LLC*,
No. 2:10-cv-09034-JHN-JCx, 2011 WL 11574477 (C.D. Cal. Oct.
13, 2011) .............................................................................................1, 11

*Thomas v. Fry's Elecs., Inc.*,
400 F.3d 1206 (9th Cir 2005) ...............................................................9

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010).................................................21

*In re Toyota Motor Corp.*,
790 F. Supp. 2d 1152 (C.D. Cal. 2011).................................................20

*Turcios v. Carma Labs., Inc.*,
296 F.R.D. 638 (C.D. Cal. 2014)...........................................................21

*Viggiano v. Hansen Natural Corp.*,
944 F. Supp. 2d 877 (C.D. Cal. 2013)...................................................25

*Wilson v. Midway Games, Inc.*,
198 F. Supp. 2d 167 (D. Conn. 2002) ..................................................23

STUDIOS' SPECIAL MOTION TO STRIKE PURSUANT TO CAL. ANTI-SLAPP STATUTE

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Winter v. G. P. Putnam's Sons*,
    938 F.2d 1033 (9th Cir. 1991) ............................................................... 23

**STATE CASES**

*All One God Faith, Inc. v. Organic and Sustainable Indus. Standards, Inc.*,
    183 Cal. App. 4th 1186 (2010) ................................................. 16, 17, 20

*Atkinson v. Elk Corp.*,
    109 Cal. App. 4th 739 (2003) ................................................................ 22

*Belton v. Comcast Cable Holdings, LLC*,
    151 Cal. App. 4th 1224 (2007) .............................................................. 25

*Boltz v. Buena Vista Home Entertainment, Inc.*,
    No. BC 323842 (Cal. Super. Ct., L.A. Cty., Apr. 20, 2006) ...................... passim

*Consumer Advocates v. Echostar Satellite Corp.*,
    113 Cal. App. 4th 1351 (2003) ................................................. 17, 20, 22

*Dyer v. Childress*,
    147 Cal. App. 4th 1273 (2007) .............................................................. 14

*Koebke v. Bernardo Heights Country Club*,
    115 P.3d 1212 (Cal. 2005) .................................................................... 25

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ................................................................ 17

*Martinez v. Metabolife Int'l, Inc.*,
    113 Cal. App. 4th 181 (2003) ................................................... 10, 11, 23

*Mattel, Inc. v. Luce, Forward, Hamilton & Scripps*,
    99 Cal. App. 4th 1179 (2002) ............................................................... 10

*Navellier v. Sletten*,
    29 Cal. 4th 82 (2002) ........................................................................... 10

*Stewart v. Rolling Stone LLC*,
    181 Cal. App. 4th 664 (2010) ............................................................... 11

-iv-

# TABLE OF AUTHORITIES
### (continued)

Page

*Tamkin v. CBS Broad., Inc.*,
193 Cal. App. 4th 133 (2011) ............................................................. 1, 12, 14, 15

*In re Tobacco Cases II*,
240 Cal. App. 4th 779 (2015) ............................................................. 21

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ............................................................. 20

*Wilson v. Parker, Covert & Chidester*,
28 Cal. 4th 811 (2002) ............................................................. 10, 16

**FEDERAL STATUTES**

17 U.S.C. § 202 ............................................................. 23

47 U.S.C. § 613 ............................................................. 3, 6, 7

Pub. L. No. 111-260 § 202, 124 Stat. 2751 (codified at Section 713 of
the Communications Act 1934, 47 U.S.C. § 613) ............................................................. 3, 6

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17500 ............................................................. 9

Cal. Bus. & Prof. Code § 17200 ............................................................. 9

Cal. Civ. Code § 51 ............................................................. 9, 25

Cal. Civ. Code § 1770 ............................................................. 9

Cal. Civ. Code § 1791 ............................................................. 21, 24

Cal. Civ. Code. § 1791.1 ............................................................. 9, 21, 24

Cal. Civ. Code. § 1792 ............................................................. 9, 21, 24

Cal. Civ. Code. § 1792.1 ............................................................. 9, 21, 24

Cal. Code Civ. Proc. § 425.16 ............................................................. 10, 14

Cal. Code Civ. Proc. § 425.17 ............................................................. 16

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**FEDERAL REGULATIONS**

47 C.F.R. § 79.1 ...........................................................................................7

47 C.F.R. § 79.4 ...........................................................................................7

Closed Captioning of Video Programming; Telecommunications for
   the Deaf and Hard of Hearing; Petition for Rulemaking, 79 Fed.
   Reg. 17911, (Mar. 31, 2014) ...........................................................7, 18

**OTHER AUTHORITIES**

*Civil Rights – Americans with Disabilities Act – District Court
   Approves Settlement Requiring Movie Theaters To Provide Closed
   Captioning for Deaf and Hard-of-Hearing People* – Ball v. AMC
   Entertainment, Inc*., 315 F. Supp. 2d 120 (D.D.C. 2004)*, 118 Harv.
   L. Rev. 1777 (2005)..................................................................... 14

John F. Stanton, *[Song Ends] – Why Movie and Television Producers
   Should Stop Using Copyright as an Excuse Not to Caption Song
   Lyrics*, 22 U.C.L.A. L. Rev. 157, 170 (2015)......................................8

John F. Waldo, *The ADA and Movie Captioning: A Long and Winding
   Road to an Obvious Destination*, 45 Val. U. L. Rev. 1033 (2011) ..................... 14

Virginia Wooten, *Waiting and Watching in Silence: Closed Captioning
   Requirements for Online Streaming under* National Association for
   the Deaf v. Netflix, Inc. and the CVAA, 14 N.C J.L. & Tech. Online
   135 (2012)............................................................................ 14

## I.      INTRODUCTION

In this putative nationwide class action, Plaintiffs challenge captioning and subtitling in movies and TV shows produced and/or distributed by the Studios through theaters, DVDs/Blu-rays ("DVDs"), and streaming services.  Plaintiffs allege that, while dialogue is captioned and subtitled in these movies and TV shows, they are misrepresented as "captioned" or "subtitled" and violate implied warranty and civil rights laws because *some but not all* song lyrics are captioned and subtitled.  According to Plaintiffs, reasonable consumers understand the terms "captioned" and "subtitled" to mean that *all* song lyrics will be captioned and subtitled.  On this basis, Plaintiffs ask this Court to compel the Studios to caption all song lyrics in all movies and TV shows distributed in theaters, DVDs, and streaming services, and to refund all past purchases and rentals of movies and TV shows in which all song lyrics were not captioned.

No law requires the relief Plaintiffs seek:  captioning or subtitling of *all* song lyrics in *all* movies and TV shows distributed through theaters, DVDs, and streaming services.  More fundamentally, existing law provides that captioning and subtitling constitute protected expression or, at a minimum, further the exercise of the Studios' freedom of expression in the challenged movies and TV shows.[1] Plaintiffs' Complaint is thus subject to strike under California's anti-SLAPP statute, unless Plaintiffs can demonstrate that their claims are both legally sufficient *and* supported by a sufficient prima facie showing of facts to prevail.  Plaintiffs cannot

---

[1] *See Greater Los Angeles Agency on Deafness, Inc. ("GLAAD") v. Cable News Network, Inc. ("CNN"),* 742 F.3d 414 (9th Cir. 2014) (holding that captioning of online videos constitutes protected conduct under the anti-SLAPP statute); *Tamkin v. CBS Broad., Inc.,* 193 Cal. App. 4th 133, 143 (2011) (holding that the creative process underlying the creation of a television show constitutes a matter of public interest); *Sarver v. Hurt Locker LLC,* No. 2:10-cv-09034-JHN-JCx, 2011 WL 11574477, at *4 (C.D. Cal. Oct. 13, 2011) (holding that the commercial film *The Hurt Locker* constitutes protected speech on a matter of public interest for the purposes of the anti-SLAPP statute).

meet this burden for four reasons:

*First*, Plaintiffs' "misrepresentation" claims are contradicted by their own allegations.  Plaintiffs contend they were deceived into believing that *all* song lyrics were captioned or subtitled, but they do not and cannot point to any representation by the Studios that *all* song lyrics in the challenged movies and TV shows are captioned or subtitled.  Instead, Plaintiffs allege that the challenged movies and TV shows were described as "captioned" or "subtitled," and that they "check a movie or show to see if the 'captioned' or 'subtitled' representation is present before purchasing or renting the DVD, theater ticket, or streaming."  Compl. ¶ 39.  But Plaintiffs do not and cannot allege facts showing that they or any reasonable consumer understand the terms "captioned" or "subtitled" to mean that *all* song lyrics are captioned or subtitled.  To the contrary, Plaintiffs admit that they have watched "numerous" movies and TV shows represented as "captioned" or "subtitled" that *do not* caption or subtitle all song lyrics.  Compl. ¶¶ 1-9, 36.  Indeed, Plaintiffs allege that this has happened over and over again, in a pattern they describe as "frustratingly widespread."  Compl. ¶ 36.  If that is so, then how are they deceived?  Plaintiffs know from the "numerous" movies and TV shows they admit watching, and the "many, many other examples" they describe, that not all song lyrics are captioned or subtitled.  Plaintiffs' admission that they understood the terms "captioned" and "subtitled" to mean captioning and subtitling of *some* but *not all* song lyrics directly undermines their misrepresentation claims.

Take Plaintiff Christine Anthony.  She alleges that she viewed "numerous" movies "marked and advertised as having captions, English subtitles, or subtitles for the Deaf and Hard of Hearing" but that these movies or TV shows did not caption or subtitle all song lyrics.  Compl. ¶ 1.  She watched both the original and the sequel to *The Avengers*, all three *Iron Man* movies, *Thor II*, and *Minions* in the theater.  She alleges that every one of these movies did not caption or subtitle all song lyrics.  On DVD, she alleges that she watched *Princess Diaries* parts I and II, *Captain America*

parts I and II, *Thor*, and all three *X-Men* films.  Again, these movies did not caption or subtitle all song lyrics.  After watching movie after movie that did not caption all song lyrics, Ms. Anthony does not, and cannot, plausibly allege that she understood the terms "captioned" or "subtitled" to include all song lyrics.

**Second**, contrary to Plaintiffs' claims, captioning or subtitling across all of the challenged distribution channels here is not required by any existing law, much less captioning or subtitling of *all* song lyrics.  Existing law addresses captioning or subtitling of all song lyrics in only one distribution channel, which Plaintiffs do not challenge: television programs exhibited on broadcast channels.[2]  No law requires the relief Plaintiffs claim to be entitled to here: captioning or subtitling of *all* song lyrics in *all* movies and TV shows distributed through theaters, DVDs, and streaming services.

**Third**, Plaintiffs also ignore prior litigation challenging captioning that necessarily would have included many of the same putative class members Plaintiffs claim to represent here.  In *Boltz v. Buena Vista Home Entertainment, Inc.*, No. BC 323842 (Cal. Super. Ct., L.A. Cty., Apr. 20, 2006), the putative class challenged captioning for DVD bonus materials as well as the representations made about that captioning.  The parties resolved the case through a class settlement which expressly recognized that song lyrics did not need to be captioned in every instance.  Declaration of Melinda E. LeMoine ("LeMoine Decl."), Ex. A at 32, 34 (Amended Agreement of Settlement, Compromise and Release §§ 2.3(A)(iii)(3)(ii), 2.3(B)(iii)(2)(ii)).  Plaintiffs cannot plausibly claim that they expected all song lyrics to be captioned – or that the Studios are obligated to caption all song lyrics – when the *Boltz* settlement expressly negated this obligation.

---

[2] Pub. L. No. 111-260 § 202(a)-(b), 124 Stat. 2751 (codified at Section 713 of the Communications Act 1934, 47 U.S.C. § 613) ("CVAA").

1    ***Finally***, because Plaintiffs cannot point to any law requiring all song lyrics to

2    be captioned or subtitled, they ask this Court to create and impose such a

3    requirement on the Studios by distorting California's warranty and civil rights laws.

4    Plaintiffs' warranty claims are plainly inapplicable to the challenged movies and TV

5    shows for reasons explained below.  And controlling Ninth Circuit precedent makes

6    clear Plaintiffs cannot bring a civil rights claim on these facts.  *GLAAD v. CNN*, 742

7    F.3d at 426.

8    The Court should strike each of Plaintiffs' claims in full.

9    **II.    BACKGROUND**

10   **A.    Methods of Distribution for Movies and TV Programs.**

11   The Studios are in the business of creating, producing, distributing, licensing

12   and marketing many forms of entertainment, including motion pictures.  Some of

13   the Studios here also create, produce, distribute, acquire, license and/or market

14   television programming.  Each Studio aims to offer a wealth of options to customers

15   to view movies and/or TV programs.  The Studios distribute their motion pictures to

16   theaters.  Customers can buy physical copies of the movie or TV program (on DVD)

17   at retail stores like Wal-Mart or Best Buy, as well as rent a copy at physical

18   locations or through digital service providers like iTunes or Amazon.  Digital

19   services like iTunes and Amazon also allow customers to download and license a

20   permanent copy of a movie or TV program.  Or customers can access a copy on

21   demand for a fixed period of time through a cable, satellite or Internet-delivered

22   video-on-demand ("VOD") platform, like DirecTV or Hulu.  Customers can also

23   view a movie or program through subscription VOD streaming services like Netflix.

24   And, of course, customers can watch a movie or program on network television,

25   delivered through broadcast, cable, or satellite.

26   **B.    Captioning and Subtitling in Movies and TV Programs.**

27   The Studios offer motion pictures and television programs with captioning

28   and/or subtitling in all of these distribution channels.  As Plaintiffs admit, the terms

-4-

"captioning" and "subtitling" refer to different methods of including auditory information in a visual medium. Compl. ¶ 35. As Plaintiffs admit, various forms of captioning and subtitling employ different protocols and conventions. *Id.* One captioning vendor's description of the differences among protocols is provided in the attached Declaration, but other captioning vendors or content providers may use the terms differently. *See, e.*g., LeMoine Decl., Ex. B (Lily Bond, *How Subtitles for the Deaf and Hard-of-Hearing (SDH) Differ from Closed Captions*, 3Play Media, http://www.3playmedia.com/2014/05/21/how-subtitles-deaf-hard-of-hearing-sdh-differ-from-closed-captions/ (May 21, 2014)). These protocols have differences that can affect the content of text, including whether the text may be aligned in different parts of the screen or "locked" in one place. *Id.* Plaintiffs use the terms interchangeably and describe the differences as "immaterial." Compl. ¶ 35. The Studios disagree that the differences are immaterial, but this brief accepts Plaintiffs' convention for simplicity's sake.

As Plaintiffs admit, the Studios "determine[] the content" of their motion pictures or television programs, including the captions. Compl. ¶¶ 11, 12, 16. Plaintiffs admit those captions include dialogue. Compl. ¶ 36. Also, as Plaintiffs admit, captions include *some* song lyrics. *See, e.g.*, Compl. ¶¶ 6, 7 (alleging that "not all of the song lyrics" in certain movies were captioned/subtitled). In fact, the movies and TV shows cited in Plaintiffs' Complaint demonstrate that some song lyrics are included in captions, and others are not. For example, in a DVD version of *Selma*, one of the movies cited in the Complaint, lyrics are captioned when one character sings to Martin Luther King over the phone. LeMoine Decl. ¶ 5. Similarly, in a DVD version of *Major League*, when the crowd sings "Wild Thing" to Charlie Sheen's character, those lyrics are captioned. *Id.* ¶ 6. And in a DVD version of *Wet Hot American Summer*, song lyrics are captioned in several instances: for the music over the opening credits, for background music that emphatically announces the entry of a particular character, and for songs sung by

1   characters on screen.  *Id*. ¶ 7.

2      Other lyrics in movies cited in Plaintiffs' Complaint are not captioned.  In a

3   streaming version of *Rain Man*: When Tom Cruise's character teaches Dustin

4   Hoffman's character to dance, the background song's name and first line of its lyrics

5   are captioned.  *Id*. ¶ 8.  But once the characters begin to speak, the dialogue is

6   captioned *instead of* the lyrics.  *Id*.  In the next scene, which occurs in a crowded

7   casino, the captions announce the existence of background vocal music and chatter.

8   *Id*.  Once again, the dialogue is captioned, rather than the lyrics of the faint

9   background music.  *Id*.  The same is true in a streaming version of *Cars*, in which

10  for one scene the song title, artist name, and lyrics of a background song are initially

11  captioned.  *Id*. ¶ 9.  When characters begin to speak over the music, the dialogue is

12  captioned instead of the song lyrics.  *Id*.  Similarly, in a DVD version of *The Theory*

13  *of Everything*, in one scene operatic music plays in the background.  The scene is

14  captioned "Opera Music Playing," communicating the type of music playing but not

15  the precise lyrics.  *Id*. ¶ 10.  And in the iTunes version of *Guardians of the Galaxy*,

16  the captions describe "Mellow Pop Song Playing on Walkman," the type of music

17  playing in the background, but do not supply the lyrics.  *Id*. ¶ 11.

18      Captioning some song lyrics but not others is permitted under existing law.

19  Motion pictures distributed in theaters, on DVDs, and through streaming services

20  are not required to contain particular captioning content.  Beginning in 1990 with

21  the Television Decoder Circuitry Act ("TDCA"), then in the Telecommunications

22  Act of 1996 ("1996 Act"), and most recently in the Twenty-First Century

23  Communications and Video Accessibility Act of 2010 ("CVAA"), *broadcast*

24  *television programming* must be closed captioned.[3]  Only recently, after nearly a

25  decade of regulatory proceedings, including hundreds of public comments totaling

26  _____

27  [3] Pub. L. No. 111-260 § 202(a)-(b), 124 Stat. 2751 (codified at Section 713 of the

28  Communications Act 1934, 47 U.S.C. § 613).

thousands of pages, the FCC promulgated regulations setting quality standards for such closed captions in broadcast television programming.  47 C.F.R. § 79.1. Through that rulemaking, the FCC recognized that there were "inconsistencies in the quality of closed captioning throughout the industry…."  Closed Captioning of Video Programming; Telecommunications for the Deaf and Hard of Hearing; Petition for Rulemaking, 79 Fed. Reg. 17,911, 17,912 (Mar. 31, 2014).[4]  And no requirement under the ADA applies to movies and TV shows in any of the challenged distribution channels.[5]  Simply put: **No law requires the Studios to caption *all* song lyrics, for *all* movies and TV shows, across *any* – much less *all* – of the distribution channels Plaintiffs target here.**  The Studios remain free to caption or subtitle some but not all song lyrics, exactly as Plaintiffs admit they have done.  To hold otherwise would improperly limit the Studios' exercise of creative discretion.  *See infra* Section III.A.

> **C.     The *Boltz* Settlement.**

Plaintiffs' Complaint largely replicates a previous complaint challenging captioning of movies and TV shows on behalf of a class of people who are deaf and hard of hearing, *Boltz v. Buena Vista Home Entertainment, Inc.*, No. BC 323842 (Cal. Super. Ct., L.A. Cty., Apr. 20, 2006).  In *Boltz*, the plaintiff class (which was nearly identical to the putative class in this case) challenged representations about captioning on DVDs, exactly as Plaintiffs do here.  In *Boltz*, the plaintiffs *admitted* that no law requires captioning of all song lyrics in all movies and TV shows distributed on DVDs.  Specifically, they acknowledged that "defendants could not

---

[4] These broadcast television requirements remain applicable when the same television programs are delivered through internet protocol.  47 C.F.R. § 79.4.  That is immaterial for this Motion, because (1) there is no private right of action to enforce the regulations, 47 U.S.C. § 613(j); and (2) Plaintiffs make no allegations about a requirement applying to broadcast TV content later delivered over the Internet.

[5] Plaintiffs presumably recognize this as they have not made any ADA claim.

be legally compelled" to provide the captioning demanded, and that "no law requires Defendants to closed caption any materials on their DVDs." LeMoine Decl., Ex. D at 72, 79 (Pls.' Mem. in Supp. of Joint Mot. for Prelim. Approval of Settlement). And, contrary to Plaintiffs' claims here, the *Boltz* settlement agreement acknowledged that song lyrics would not always be captioned. *Id.*, Ex. A at 32, 34 (Amended Agreement of Settlement, Compromise and Release §§ 2.3(A)(iii)(3)(ii), 2.3(B)(iii)(2)(ii)). The *Boltz* settlement focused both on the captions included in DVDs, *and* on the representations about captioning that the studio defendants would be required prospectively to include on their DVD packaging.

Plaintiffs here must be fully aware of the *Boltz* settlement – including specifically its carve-out for song lyrics and description of DVD packaging. Plaintiffs are all members of the Alexander Graham Bell Association for the Deaf and Hard of Hearing ("AG Bell Association"), which issued a press release upon filing of this Complaint. *See* LeMoine Decl., Ex. C (Daniel Ors, *Members File Lawsuit*, Alexander Graham Bell Assoc. for the Deaf and Hard of Hearing (Oct. 2015), http://www.agbell.org/ClassActionSuitOctober2015/). The press release quotes some of the Plaintiffs and admits their case was inspired by a law review article written by AG Bell member and activist John Stanton. *Id.* Stanton's article details the *Boltz* settlement – including its exemption for song lyrics.[6] Plaintiffs largely copied their own Complaint from the *Boltz* complaint. Plaintiffs thus must know what Stanton's article and the *Boltz* settlement make clear: that no law required captioning of DVDs; that song lyrics are not uniformly captioned in any event; and that the representation "captioned" or "subtitled" would *not* mean that all song lyrics would be captioned.

---

[6] John F. Stanton, *[Song Ends] – Why Movie and Television Producers Should Stop Using Copyright as an Excuse Not to Caption Song Lyrics*, 22 U.C.L.A. L. Rev. 157, 170 (2015).

### D.     Claims in This Case.

Against this backdrop, Plaintiffs assert essentially three groups of claims against the Studios.  First, Plaintiffs contend that the Studios deceived them into believing that all song lyrics would be captioned by representing the challenged movies and TV shows as containing captions, subtitles, or subtitles for the deaf or hard of hearing in violation of California's Unfair Competition Law ("UCL," Cal. Bus. & Prof. Code § 17200), False Advertising Law ("FAL," *id.* § 17500), and Consumers Legal Remedies Act ("CLRA," Cal. Civ. Code § 1770(A)(5))(the "**Misrepresentation Claims**").  But Plaintiffs do not quote from or identify a single statement actually made by the Studios in movie theaters, on DVD boxes, through digital streaming services, or otherwise that all song lyrics would be captioned.  Nor do Plaintiffs explain how the terms "captioned" or "subtitled" could reasonably be interpreted to mean that all song lyrics would be captioned or subtitled, given Plaintiffs' admission that they watched numerous movies and/or TV shows that did not caption or subtitle all song lyrics.  Second, Plaintiffs contend that because the challenged movies and TV shows do not caption all song lyrics, the Studios have breached the implied warranties of fitness and merchantability under California's Song-Beverly Act (Cal. Civ. Code. §§ 1791.1, 1792, 1792.1) (the "**Warranty Claims**").  Plaintiffs cannot distort this law, which applies only to "sales" of "consumer goods," to compel a change in the content of movies and TV shows.  Third, Plaintiffs claim the captioning violates California's Unruh Civil Rights Act (Cal. Civ. Code § 51) (the "**Unruh Act Claim**").  The Ninth Circuit has recognized in similar circumstances involving captioning of video that an Unruh Act Claim like Plaintiffs' cannot stand.  *GLAAD,* 742 F.3d at 426-27.  Because none of these claims can succeed, all must be stricken.

## III.   ARGUMENT

California's anti-SLAPP statute applies to these state law claims in federal court.  *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206 (9th Cir 2005).  An anti-SLAPP

motion requires a two-step analysis: First, the party responding to the SLAPP suit must make a threshold showing that each challenged cause of action arises from protected activity.  The focus is not on "the form of the [proponent's] cause of action," but on the "*activity* that gives rise to his or her asserted liability – and whether that activity constitutes protected speech or petitioning." *Navellier v. Sletten*, 29 Cal. 4th 82, 92 (2002) (emphasis in original).  Following that showing, the proponent of the SLAPP suit must demonstrate a probability of prevailing on its claim.  *Mattel, Inc. v. Luce, Forward, Hamilton & Scripps,* 99 Cal. App. 4th 1179, 1188 (2002).  To proceed with the action, the proponent "must demonstrate that the complaint is *both* legally sufficient *and* supported by a sufficient prima facie showing of facts to sustain a favorable judgment." *Wilson v. Parker, Covert & Chidester,* 28 Cal. 4th 811, 821 (2002) (emphasis added) (citations omitted).  If the proponent fails to satisfy those burdens, the Court must strike the cause of action.  Cal. Code Civ. Proc. § 425.16(b)(1).

### A.   Step One: Plaintiffs' Claims Arise from Acts in Furtherance of the Right to Free Speech in Connection with a Public Issue.

The first prong of the anti-SLAPP analysis requires the Studios to show that Plaintiffs' claims "aris[e] from any act . . . in furtherance" of (1) the right to petition or free speech (2) in connection with a public issue.  Cal. Code Civ. Proc. § 425.16(b)(1).  "California courts 'have interpreted this piece of the defendant's threshold showing rather loosely.'" *GLAAD*, 742 F.3d at 422.  "'A court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis, if necessary.'" *Id.*

In assessing whether a claim "arises from" protected conduct, courts look to the "*gravamen or principal thrust* of the claims asserted." *Martinez v. Metabolife Int'l, Inc.*, 113 Cal. App. 4th 181, 188 (2003) (emphasis added).  The focus should not be on the particular form of the cause of action, but rather on "the defendant's

*activity* that gives rise to his or her asserted liability and whether that activity constitutes protected speech or petitioning." *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 679 (2010).

Here, the "activity" targeted, or "gravamen or principal thrust" of each claim, is the same:  captioning of some, but not all, song lyrics in motion pictures or television programs distributed through theaters, DVDs, and streaming services. *Martinez*, 113 Cal. App. 4th at 193.  The Ninth Circuit has held that free speech rights "do not merely lurk in the background" of a case alleging similar claims about the extent of captioning.  *GLAAD*, 742 F.3d at 423.  The same is true here.

### 1.    Captioning Constitutes an "Act in Furtherance" of the Right to Free Speech.

The Studios' captioning constitutes an "act in furtherance" of their right to freedom of expression for three reasons.

*First*, captioning is part of the movies and television programs Plaintiffs challenge in this case, which well-established case law holds constitute protected expression. *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502 (1952); *see also Sarver v. Hurt Locker LLC*, 2011 WL 11574477, at *4 (holding that the commercial film *The Hurt Locker* constitutes protected speech for the purposes of the anti-SLAPP statute).  As the Ninth Circuit has held, "communicative" activity "suffice[s]" to satisfy this element.  *Hilton v. Hallmark Cards*, 599 F.3d 894, 904 (9th Cir. 2010).  And, as Plaintiffs admit, captions communicate what is going on in the challenged movies and television programs.  Plaintiffs admit that the Studios "determine[] the content" of captioning (Compl. ¶¶ 11, 12, 16), and that captioning is required "to understand and enjoy" the challenged movies and television programs (Compl. ¶¶ 1-9; 34, 38); these admissions confirm that captions constitute the Studios' "communicative" activity and therefore satisfy the first prong of the anti-SLAPP analysis.  *See also* LeMoine Decl. ¶¶ 5-11 (offering examples of captioning from movies cited in Plaintiffs' Complaint).

*Second*, even if captioning does not itself constitute protected expression (and it does), it still satisfies the anti-SLAPP statute's first prong because it *furthers* the Studios' protected expression in the challenged movies and televisions programs. "By its terms, [the anti-SLAPP statute] includes not merely actual exercises of free speech rights but also *conduct that furthers such rights*." *Doe v. Gangland Prods*., 730 F.3d 946, 953 (9th Cir. 2013) (emphasis added). "An act is in furtherance of the right of free speech if the act helps to advance that right or assists in the exercise of that right." *See Tamkin v. CBS Broad., Inc.,* 193 Cal. App. 4th at 143. Plaintiffs' admission that captioning is required to "to understand and enjoy" the movies and television programs at issue in this case demonstrates that captions "advance" or "assist[] in the exercise" of the Studios' right of expression embodied in movies or shows.

Finally, the Ninth Circuit has already held that the anti-SLAPP statute's first prong extends to captioning in an action like this one, which "directly targets the way a content provider chooses to deliver, present, or publish" its content. *GLAAD*, 742 F.3d at 423-25. Plaintiffs' Complaint directly targets how the Studios choose to deliver and present their movie and television program content by seeking to impose a requirement that *all* song lyrics, not just some, be captioned. Plaintiffs demand an injunction "requiring defendants to provide fully captioned movies or shows." Prayer for Relief ¶ 4. Plaintiffs contend that a product labeled as "captioned" or "subtitled" must be "*fully* captioned":

> Defendants *failed to fully caption or subtitle the movies or shows, as indicated on the public representations*, for example, by not captioning or subtitling the music/song lyrics. Failure to caption subtitle [sic] the song/music lyrics precludes deaf and hard of hearing consumers from being able to fully enjoy the movie or show. Plaintiffs and others similarly situated are denied full access to feature presentations or shows."

Compl. ¶ 38 (emphasis added). Plaintiffs insist that such captioning "*should include . . . music/song lyrics . . .*" Compl. ¶ 39 (emphasis added).

1    In *GLAAD*, the Ninth Circuit faced a similar issue: whether a lawsuit

2  challenging CNN's failure to caption videos posted on its website targeted conduct

3  in furtherance of CNN's free speech rights.  742 F.3d at 421-25.  The Court

4  concluded that the lawsuit targeted protected conduct, and thus held that the first

5  prong of the anti-SLAPP statute was satisfied.  *Id*. at 421-22. The Court held that

6  plaintiffs' claims demanding a change in captioning practices "arise[] directly from

7  CNN's decision to publish and its publication of online news videos without closed

8  captions and seeks an injunction that would require CNN to adopt such captions for

9  every video on its web site."  *Id*. at 423.  "GLAAD would have no reason to sue

10 CNN absent the news videos on CNN.com."  *Id*.  Because GLAAD sought to

11 "change the way CNN has chosen to report and deliver [] news content by imposing

12 a site-wide captioning requirement . . . GLAAD targets conduct that advances and

13 assists CNN in exercising its protected right to report the news."  *Id*.

14    The Ninth Circuit's reasoning in *GLAAD* applies here.  As in the *GLAAD*

15 case, Plaintiffs' Complaint "arises directly from [the Studios'] decision" to caption

16 some but not all song lyrics.  The Complaint "seeks an injunction that would

17 require" the Studios "to adopt such captions for every" song in every motion picture

18 and television show.  *Id*.  Absent the captioning in movies and television programs,

19 Plaintiffs would have no reason to sue the Studios.  *Id*. And as in the *GLAAD* case,

20 Plaintiffs attempt to "change the way" the Studios have chosen to deliver their

21 content, which would interfere with the Studios' right to freedom of expression.  If

22 Plaintiffs obtained the relief they seek, their choice of speech would replace the

23 Studios' choice of speech.  All song lyrics would have to be captioned, even if they

24 were merely part of the background music underscoring key dialogue and even if

25 the Studio had no contractual and/or legal right to display the song's lyrics in the

26 first instance.

27

28

**2.     Captioning Is "in Connection with a Public Issue or an Issue of Public Interest."**

Also as in the *GLAAD* case, Plaintiffs here target conduct "in connection with a public issue or an issue of public interest."  Cal. Code Civ. Proc. 425.16(e)(4).  The operative question under the anti-SLAPP statute is whether the *defendant's conduct* relates to a matter of public interest.  *Gangland*, 730 F.3d at 955-57.  The public issue need not be "significant to be protected by the anti-SLAPP statute – it is enough that it is one in which the public takes an interest."  *Tamkin*, 193 Cal. App. 4th at 143 (internal quotation marks omitted).  And although "not all speech in a movie is of public significance and therefore entitled to protection under the anti-SLAPP statute," *Dyer v. Childress*, 147 Cal. App. 4th 1273, 1280 (2007), like the rest of the anti-SLAPP statute requirements, the public issue requirement "shall be construed broadly,"  Cal. Code Civ. Proc. 425.16(a).

Plaintiffs themselves, through their advocacy organization, have admitted that the public is interested in the measures taken by studios to make films and television shows accessible to the deaf and hard of hearing.  The AG Bell Association, an advocacy group of which Plaintiffs are members, announced the filing of this action with a press release.  That press release stated that the "importance of captioning and subtitles in mass visual media cannot be stressed enough."  LeMoine Decl., Ex. C at 65.  Media accessibility and the methods for achieving that goal are routinely the subject of active discussion in the legislative, academic, and legal arenas.[7]

---

[7] *See generally* Virginia Wooten, *Waiting and Watching in Silence: Closed Captioning Requirements for Online Streaming under* National Association for the Deaf v. Netflix, Inc. *and the CVAA*, 14 N.C J.L. & Tech. Online 135 (2012); John F. Waldo, *The ADA and Movie Captioning: A Long and Winding Road to an Obvious Destination*, 45 Val. U. L. Rev. 1033 (2011); Recent Case, *Civil Rights – Americans with Disabilities Act – District Court Approves Settlement Requiring Movie Theaters to Provide Closed Captioning for Deaf and Hard-of-Hearing People* – Ball v. AMC Entertainment, Inc.*, 315 F. Supp. 2d 120 (D.D.C. 2004)*, 118 Harv. L. Rev. 1777 (2005).

Indeed, Plaintiffs admit that this lawsuit was inspired by a law review article written by John Stanton, described as a "driving force" behind this lawsuit.  Stanton is quoted in the press release acknowledging:

> [T]he captioning of song lyrics in movies or shows is inconsistent at best.  Sometimes they are captioned, sometimes they are not. . . . [T]he primary goal for this suit is to force studios to re-evaluate their practices and either commit to captioning song lyrics or at least make clear to deaf and hard of hearing viewers that the songs in their media are not captioned.

*Id.*

If Plaintiffs' admissions were somehow insufficient (and they are not), the process of making movies and television programs is *itself* a matter of public interest.  *See Tamkin*, 193 Cal. App. 4th at 143-44 (holding that writing, casting, and broadcasting of television show is a matter of public interest).  Even if Plaintiffs' case did not implicate the important public issue of media accessibility for the deaf and hard of hearing, Plaintiffs' focus on motion pictures or television programs would be sufficient in and of itself to meet the public interest requirement.

Plaintiffs cannot escape the anti-SLAPP statute's reach here by contending that their claims target "pure commercial speech" that does not rise to the level of a public interest.  First, the challenged speech is not mere commercial speech that "does no more than propose a commercial transaction."  *Hilton*, 599 F.3d at 905 n.7.  Plaintiffs do not merely target advertising *about* movies and television programs – they target the movies and television programs themselves.  They describe the captioning that "should" be included in the movies and television shows, and contend that the Studios "*failed to fully caption or subtitle the movies or shows*, as indicated on the public representations, for example, by not captioning or subtitling the music/song lyrics."  Compl. ¶¶ 38, 39 (emphasis added).  Plaintiffs demand that the actual captioning and subtitling in movies and TV programs should be different, not merely that the products need to be marketed differently.  Where allegedly commercial speech is "inextricably intertwined" with protected speech relating to an

issue of public interest, the anti-SLAPP statute applies.  *See All One God Faith, Inc. v. Organic & Sustainable Indus. Standards, Inc.*, 183 Cal. App. 4th 1186, 1209 (2010).  Second, even if Plaintiffs  attempted to focus only on how the terms "captioned" or "subtitled" appear in advertising, their claims would still be precluded by the anti-SLAPP statute.  In crafting a statutory exemption to the anti-SLAPP statute for certain commercial speech, the legislature specifically recognized that the anti-SLAPP statute would still apply to any "action against any person or entity based upon the creation, dissemination, exhibition, *advertisement*, or other similar promotion *of any* dramatic, literary, musical, political, or artistic work, including, but not limited to, a *motion picture or television program*."  Cal. Code Civ. Proc. § 425.17(d)(2) (emphasis added).

Plaintiffs' Complaint is replete with admissions that their claims target conduct in furtherance of the Studios' free speech rights, whose "importance . . . cannot be stressed enough."  The Court should therefore hold that the Studios satisfy prong one.

**B.     Step Two: Plaintiffs Will Not Be Able to Demonstrate a Probability of Prevailing on Each of Their Claims.**

Because each of Plaintiffs' claims "arise[s] from" the Studios' protected conduct, Plaintiffs "must demonstrate that the complaint is *both* legally sufficient *and* supported by a sufficient prima facie showing of facts to sustain a favorable judgment."  *Wilson v. Parker, Covert & Chidester* 28 Cal. 4th 811, 821 (2002) (emphasis added).  Plaintiffs cannot make this showing.

**1.     Plaintiffs' Misrepresentation Claims Will Not Succeed.**

**a.     Plaintiffs Cannot Prove Any Misrepresentation by the Studios That Is "Likely to Deceive" Reasonable Consumers.**

Plaintiffs' own allegations contradict their claim that they were deceived into believing that the terms "captioned" and "subtitled" mean that *all song lyrics* are captioned or subtitled in the challenged movies and television shows.  According to

Plaintiffs, they "check" whether a movie or TV show is marked "captioned" or "subtitled" before buying a ticket, purchasing or renting a DVD, or streaming a motion picture or TV program. Compl. ¶ 39. And then, *every time* Plaintiffs view a movie or television show, they claim the movies or TV shows do *not* caption or subtitle all of the song lyrics. Compl. ¶¶ 1-9, 36. Plaintiffs have viewed "numerous DVDs, and/or viewed movies in other forums" that reflect precisely the same "frustratingly widespread" "practice." *Id.* Further, the class members from the *Boltz* class action – who would overlap with the putative class here – could not possibly have been deceived that "captioned" or "subtitled" meant that every song lyric would be captioned, because the *Boltz* settlement expressly provides just the contrary. Plaintiffs cannot in good faith contend that they have been deceived into thinking that a "captioned" or "subtitled" movie or TV show necessarily will include captioning or subtitling for *all* song lyrics. That is plainly contrary to their own experience.

In order to prevail against the Studios on their misrepresentation claims, that is exactly what they must prove: that the Studios made a representation that is "likely to [] deceive[]" reasonable consumers. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (UCL and FAL); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003) (CLRA). Plaintiffs must prove that it is "probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Plaintiffs' own Complaint reveals that a significant portion of deaf or hearing-impaired consumers do not assume that all song lyrics are captioned, or at least that they cannot prove that it would be objectively reasonable to make such an assumption when "the practice of not subtitling song/music lyrics is *frustratingly widespread*." Compl. ¶ 35 (emphasis added). Reasonable consumers who, like the Plaintiffs themselves, have watched "numerous" movies and TV shows where captions were not provided

for all music or songs already know that the representations "captioned," "English subtitles," and "subtitles for the Deaf and Hard of Hearing" *do not* mean that captions will necessarily be provided for all songs and music in all circumstances. The "common experience" of consumers who are deaf or hard of hearing will have taught them just the opposite of what Plaintiffs allege: captions are not necessarily provided for every piece of music or sound effect in every movie or TV show marked with the generic terms "captioned" or "subtitled." *See Garcia v. Sony Comp. Entm't Am.*, *LLC*, 859 F. Supp. 2d 1056, 1065-66 (N.D. Cal. 2012).

The challenged terms mean what they say: the Studios have provided captions or subtitles for their content. These labels nowhere indicate that audio will be "fully" and completely captioned or say anything about songs or music in particular. They say nothing about whether a movie or TV show is "fully captioned," as Plaintiffs contend. Even Plaintiffs' own definitions for these terms do not include any allegation about completeness. Plaintiffs claim that "'English subtitles' make visible the words on the movie or show for viewers to read as the words are being spoken or sung," Compl. ¶ 35, and that "Captions" and "Subtitles for the Deaf and Hard of Hearing" "include additional aural information such as 'doorbell ringing,' 'explosion,' or 'applause.'" *Id.* The FCC itself confirmed in its recent rulemaking that there are "inconsistencies" within captioning that necessitated the rulemaking in the first place.[8] Plaintiffs do not claim (and cannot claim) that these three terms mean "all" music and song lyrics will be captioned – regardless of the context of the music or song in the movie, whether there is simultaneous dialogue, or other subjective considerations that may affect captioning.

Plaintiffs may not base a misrepresentation claim on generic descriptors by injecting them with specific significance. Generic statements like "captioned" or

---

[8] Closed Captioning of Video Programming; Telecommunications for the Deaf and Hard of Hearing; Petition for Rulemaking, 79 Fed. Reg. 17,911, 17,912 (Mar. 31, 2014).

"subtitled for the deaf and hard of hearing" cannot impose liability because of a specific interpretation Plaintiffs purport to assign to them.  *See Garcia*, 859 F. Supp. 2d at 1064 (rejecting contention that "mere presence of PS3 logos" was express representation of compatibility with all PS3 models, observing that "without more" plaintiff could not maintain theory "that reasonable consumers are likely to adopt his specific, and fairly extreme, understanding of the logos"); *accord Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999) (Wilson, J.), *aff'd in relevant part by* 343 F.3d 1000 (9th Cir. 2003) (misrepresentations must "ordinarily be a specific factual assertion; generalized statements are usually not actionable as fraud").

Prior classwide litigation makes clear that objectively reasonable consumers would not necessarily assume that "captioned" or "subtitled" means that "all song lyrics are captioned."  This was raised in *Boltz v. Buena Vista Home Entertainment, Inc.*, in which an overlapping class litigated against the Studios here about the extent of captioning in DVDs.  When seeking court approval of the *Boltz* settlement, the plaintiffs acknowledged that "*no law requires* Defendants to closed caption any materials on their DVDs," making settlement the only way they could obtain their desired level of captioning.  *See* LeMoine Decl., Ex. D at 79 (Pls.' Mem. ISO Joint Mot. for Preliminary Approval of Settlement, *Boltz v. Buena Vista Home Entm't, Inc.*, No. BC 323842 (Cal. Super. Ct., L.A. Cty., Feb. 6, 2006)) (emphasis added)).  In addition, the *Boltz* settlement explicitly provided that *some and not all* song lyrics would be captioned.  *See* LeMoine Decl., Ex. A at 32, 34 (Amended Agreement of Settlement, Compromise and Release §§ 2.3(A)(iii)(3)(ii), 2.3(B)(iii)(2)(ii)).  The fact that the parties agreed to such an exemption, and that the court approved it, reflects that song lyrics may not be captioned in every instance.[9]

---

[9] As described above, Plaintiffs here must be aware of the *Boltz* settlement and its carve-out for song lyrics.  *See supra* Section II.C.

### b.   Plaintiffs Cannot Prove Reliance.

Plaintiffs also must prove that they actually relied on a misrepresentation by the Studios to their detriment.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) (actual reliance required for UCL claim); *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1168 (C.D. Cal. 2011) (same for FAL); *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009) (same for CLRA).

Given their own allegations about the "frustratingly widespread" practice and what Plaintiffs have experienced in movie after movie, Plaintiffs cannot in good faith contend that they were motivated to purchase or access these movies or TV programs relying on a belief that "captioned" would include *all* song lyrics. Plaintiffs' allegations instead confirm that they relied the labels "captioned" or "subtitled" as accurately describing the full captioning or subtitling of the movie or TV show's dialogue.  The Complaint acknowledges that the dialogue "[is] indeed fully subtitled."  Compl. ¶ 36.  Plaintiffs do not claim (and they cannot in good faith claim) that they relied on "captioned" or "subtitled" to mean that *all song lyrics* would be captioned or subtitled, as opposed to relying on them for what the terms "captioned" or "subtitled" accurately represented:  that the movie or TV show included captions and subtitles.  *Id.* ¶¶ 39, 78.  Plaintiffs' reliance on "captioned" or "subtitled" to mean that there would be captions or subtitles as a general matter is not the same as relying on a specific assumption that *all song lyrics and music* – whether in the background or otherwise – would also be subtitled.

The Complaint further confirms that Plaintiffs did not consider captions or subtitles for songs to be material to their purchasing decisions, by alleging that Plaintiffs purchased multiple movies and TV shows in succession, despite necessarily being aware that not captioning songs was a "frustratingly widespread" practice.  Compl. ¶ 36; *see id.* ¶¶ 3, 6, 9 (alleging several to over twenty purchases or rentals).  Courts commonly reject UCL, FAL, or CLRA claims for failure to prove reliance when plaintiffs continue to purchase or use the allegedly

misrepresented product(s).  *See, e.g.*, *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 787 (2015); *Turcios v. Carma Labs., Inc.,* 296 F.R.D. 638, 643 (C.D. Cal. 2014);  *In re NJOY, Inc. Consumer Class Action Litig.*, No. 14-cv-00428-MMM, 2015 WL 4881091, at *20-21 (C.D. Cal. Aug. 14, 2015); *see also Red v. Kraft Foods, Inc*., No. 10-cv-1028-GW, 2012 WL 8019257, at *12 (C.D. Cal. Apr. 12, 2012) (observing that plaintiff's "post-filing purchases lend credence to [the] theory that if the challenged labels were even misrepresentations, they were not *material* misrepresentations that would influence a reasonable consumer's purchasing decisions").  Evidence of similar repeated purchases, like those already alleged in the Complaint, will prevent Plaintiffs from proving reliance and prevailing on the misrepresentation claims.

### 2.  Plaintiffs' Warranty Claims Will Not Succeed.

Absent any existing law that requires all music and song lyrics to be captioned in all content across all distribution channels, Plaintiffs attempt to force the square peg of captioning claims into the round hole of California's warranty laws.  Plaintiffs will not be able to prove that warranty law imposes an obligation on the Studios to caption all song lyrics.

### a.  Implied Warranties Do Not Apply to the Claims Here.

Plaintiffs contend that the failure to caption all music and song lyrics is a breach of the implied warranties of merchantability and fitness for a particular purpose under California law.[10]  Because Plaintiffs' claims concern the *content* of movies or television programs, these implied warranty laws are inapplicable.

Breach of implied warranty claims may be brought with respect to "consumer goods" (*see* Cal. Civ. Code §§ 1791, 1791.1, 1792), such as televisions (*e.g.*, *Marchante v. Sony Corp. of Am.*, *Inc.,* 801 F. Supp. 2d 1013, 1020-21 (S.D. Cal. 2011)), washing machines (*e.g.*, *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1142

---

[10] Cal. Civ. Code. §§ 1791.1, 1792, 1792.1

1   (N.D. Cal. 2010)), cars (*e.g.*, *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 537

2   (C.D. Cal. 2012)), and computers (*e.g.*, *Anunziato v. eMachines, Inc.*, 402 F. Supp.

3   2d 1133, 1135-36 (C.D. Cal. 2005)).  The common denominator is that goods that

4   are subject to California's implied warranty laws can be moved, serviced, or

5   repaired.  *See Atkinson v. Elk Corp.*, 109 Cal. App. 4th 739, 751-52 (2003).  Indeed,

6   the implied warranty causes of action Plaintiffs assert are contained within a

7   legislative scheme, the Song Beverly Consumer Warranty Act ("Song Beverly

8   Act"), that imposes requirements concerning *repair or service* facilities to be

9   maintained by manufacturers of consumer goods.  *See id*.

10      Plaintiffs cannot stretch the confines of the Song Beverly Act to cover their

11  captioning claims.  The *content* of movies and TV shows – including any subtitles

12  and captions – cannot qualify as a "consumer good."  A movie or TV show cannot

13  be moved, serviced, or repaired.  As for movie theaters, they "provide the *service* of

14  screening first run movies" – they do not sell movies as "goods" at all.  *Ball v. AMC

15  Entm't, Inc.*, 246 F. Supp. 2d 17, 24 (D.D.C. 2003) (emphasis in original); *see also

16  Fortyune v. Am. Multi-Cinema*, *Inc.*, 364 F.3d 1075, 1084 (9th Cir. 2004) (movie

17  theaters provide a service).  Theaters are thus not subject to implied warranty laws

18  however "consumer good" is defined.  *See Consumer Advocates v. Echostar

19  Satellite Corp.*, 113 Cal. App. 4th 1351, 1358 (2003) (affirming dismissal of

20  warranty claims against satellite broadcaster because broadcaster provided "a

21  'service' and not 'goods'").

22      With respect to DVDs and streaming services, this case does not present the

23  categorical question of whether the distribution medium containing the movie or TV

24  show – such as a DVD disc or a digital movie file – can ever be the subject of

25  warranty claims under the Song Beverly Act.  That is not what Plaintiffs' case is

26  about.  Plaintiffs target the content of the movie or TV show contained on the DVD

27  or streaming service, not the DVD or digital product itself.  Courts regularly

28  distinguish between the content of movies or other intellectual property, and the

1   medium through which that content is conveyed – and have held that the former are

2   *not* subject to warranty and products liability laws because they are not

3   "products."  *See Winter v. G. P. Putnam's Sons*, 938 F.2d 1033, 1034 (9th Cir.

4   1991) (affirming dismissal of warranty claims predicated on content of a book;

5   observing, "[a] book containing Shakespeare's sonnets consists of two parts, the

6   material and print therein, and the ideas and expression thereof.  The first may be a

7   product, but the second is not"); *Sanders v. Acclaim Entm't, Inc.*, 188 F. Supp. 2d

8   1264, 1279 (D. Colo. 2002) ("thoughts, ideas, and expressive content" contained in

9   movies and video games "are not 'products'"); *Wilson v. Midway Games, Inc.*, 198

10  F. Supp. 2d 167, 174 (D. Conn. 2002) (content of interactive video game is not a

11  "product"; collecting cases holding same).  U.S. copyright law draws the same

12  distinction.  17 U.S.C. § 202 ("Transfer of ownership of any material object,

13  including the copy or phonorecord in which the work is first fixed, does not of itself

14  convey any rights in the copyrighted work embodied in the object . . . .").

15      Plaintiffs cannot stretch products liability to reach expressive content simply

16  because they allege the content has been falsely advertised.  *See Martinez v.*

17  *Metabolife Int'l, Inc.*, 113 Cal. App. 4th 181, 189 (2003) (the implied warranty of

18  fitness for a particular purpose, like the warranty of merchantability, is "based on

19  the nature and impacts of the product, not on injuries attributable to the marketing

20  efforts by the seller").  As the Ninth Circuit has observed, "[t]he purposes served by

21  products liability law []  . . . do not take into consideration the unique characteristics

22  of ideas and expression."  *Winter*, 938 F.2d at 1034.  If Plaintiffs are concerned with

23  how the Studios have described the content of movies and TV shows, that is a

24  matter of "ideas and expression," and breach of warranty is an inappropriate cause

25  of action.  *See id.*

26      Even if one assumes video content on DVDs and video content provided

27  through digital streaming are consumer goods covered by the warranty laws,

28  Plaintiffs have not alleged, and cannot prove, that there has been a "sale" of any

-23-

1   content as required by the implied warranty statutes.  *See* Cal. Civ. Code §§ 1792,

2   1792.1 (implied warranties apply to "sale[s] of consumer goods" "at retail in this

3   state"); *id.* § 1791(n)(1) (a sale is "[t]he passing of title from the seller to the buyer

4   for a price").  Plaintiffs cannot prove a "sale" of a consumer good across any of the

5   distribution channels at issue. Movie theaters provide a service and do not sell

6   movies (*see supra*, at 22).  And purchasers of DVDs and streaming video do not

7   take *title* to any content, but instead purchase a license to view it.  For example,

8   Netflix's terms of use state: "During your Netflix membership, we grant you a

9   limited, non-exclusive, non-transferable, license to access the Netflix service and

10  view movies and TV shows through the service . . . .  no right, title or interest shall

11  be transferred to you."  LeMoine Decl., Ex. E at 100.[11]  DVDs similarly provide that

12  buyers receive only a license.  For instance, the DVD disc for the movie *Thor* states:

13  "**Licensed for private viewing only.  Any other use prohibited.**"  (emphasis in

14  original).  LeMoine Decl., Ex. H.

### b.   Plaintiffs Cannot Prove the Failure to Caption All Song Lyrics Rendered Motion Pictures and Television Programs Unfit for Their Ordinary Use.

17      Plaintiffs also cannot succeed on their implied warranty claim because they

18  have failed to allege that the movies and TV shows they purchased were unfit for

19  their ordinary use, Cal. Civ. Code § 1791.1(a)(2), or that the Studios were on notice

20  that Plaintiffs' "particular purpose" as buyers necessitated that all song lyrics be

21  captioned.  *Id.* § 1791.1.  The purpose of a movie or TV show is to provide

22  entertainment.  A movie or show that subtitles dialogue but not song lyrics remains

---

[11] Hulu's and Amazon's terms of service are similar.  LeMoine Decl., Ex. F at 108 ("Amazon grants you a personal, non-exclusive, non-transferable, non-sublicensable, license, during the applicable Viewing Period, to access, view, use and display the Digital Content in accordance with the Usage Rules, for Non-Commercial, Private Use."); *id.*, Ex. G at 112 ("You agree that Hulu owns and retains all rights to the Services.  You further agree that the Content you access and view as part of the Services is owned or controlled by Hulu and Hulu's licensors.").

fit for that purpose.  *See Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013); *accord In re iPhone 4S Consumer Litig.*, No. 12-cv-1127-CW, 2013 WL 3829653, at \*16 (N.D. Cal. July 23, 2013) (a merely "inconvenient" defect does not mean that the product lacks a "basic degree of fitness" or falls below "a minimum level of quality").  In addition, Plaintiffs have not alleged and cannot show that the Studios knew Plaintiffs had a "particular purpose" as buyers that necessitated that all *song lyrics* be captioned.  Indeed, the Studios had good reason to conclude their subtitles *do* meet the needs of the deaf and hard of hearing community, because they previously reached a settlement over captioning that did *not* require them to provide captions for all song lyrics.  *See supra*, at 7-8.

### 3.    Plaintiffs' Unruh Act Claim Will Not Succeed.

Plaintiffs' Unruh Act Claim requires them to prove "intentional discrimination."  *See Koebke v. Bernardo Heights Country Club*, 115 P.3d 1212, 1228-29 (Cal. 2005) ("intentional discrimination" is an essential element of a stand-alone Unruh Act claim).  Plaintiffs will not be able to do so here because they have not alleged discrimination *at all*.  Plaintiffs acknowledge that the same content is provided to both hearing customers and the deaf or hearing impaired.  The Ninth Circuit has held that essentially the exact same practice Plaintiffs say the Studios have engaged in – not providing captions for video content – did not violate the Unruh Act as a matter of law.  *GLAAD,* 742 F.3d at 426-27.  In that case, the defendant provided *no* captions whatsoever for its video content at the time the lawsuit was brought, by contrast to the claim here that the Studios' captions are not comprehensive.  *See id.* at 420.  If CNN's conduct was nondiscriminatory, so is the Studios'.  *Accord Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1024-25 (N.D. Cal. 2012); *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224 (2007).

## IV.   CONCLUSION

Plaintiffs' claims target protected speech in relation to a public issue.  The Court should strike the meritless claims under the anti-SLAPP statute.

1    DATED:  January 20, 2016      MUNGER, TOLLES & OLSON LLP

2

3                                 By:     /s/ Glenn D. Pomerantz

4                                         GLENN D. POMERANTZ

5                                Attorneys for Defendants BUENA VISTA

6                                HOME ENTERTAINMENT, INC.; THE
WALT DISNEY COMPANY; WARNER

7                                BROS. ENTERTAINMENT INC.; WARNER

8                                BROS. HOME ENTERTAINMENT INC.;
UNIVERSAL STUDIOS HOME

9                                ENTERTAINMENT LLC; PARAMOUNT

10                             PICTURES CORPORATION; SONY
PICTURES ENTERTAINMENT INC.; SONY

11                             PICTURES HOME ENTERTAINMENT INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STUDIOS' SPECIAL MOTION TO STRIKE PURSUANT TO CAL. ANTI-SLAPP STATUTE